UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERLINDA REYES,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendants. | Case No. 1:21-cv-00302-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 11). |

    This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 14).

    Plaintiff presents the following issues:

    1. The ALJ erred in failing to consider De Quervain's tenosynovitis and migraine headaches to be severe impairments, rendering the assessed residual functional capacity (RFC) unsupported and compelling remand.

    2. The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer legitimate reasons for rejecting Plaintiff's subjective complaints.

(ECF No. 11, p. 1-2).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

**I.   ANALYSIS**

As an initial matter, the Court notes that Plaintiff's application for benefits alleged disability from the onset date of April 27, 2016, through her date last insured of December 31, 2017. Plaintiff challenges the following RFC assessment made by the ALJ:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she must be able to alternate between standing and sitting every 30 minutes for a brief position change while continuing to work at the work station. She could perform occasional climbing of ramps and stairs and never ladders, ropes or scaffolds. The claimant could occasionally stoop, kneel, crouch, and crawl. She would need to have no more than occasional overhead reaching bilaterally and no greater than frequent handling and fingering bilaterally.

(A.R. 27). A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted).

   A.   De Quervain's tenosynovitis

Plaintiff first argues that the ALJ erred at Step Two by failing to make any finding regarding De Quervain's tenosynovitis. (ECF No. 11, p. 11). As a result, Plaintiff argues that the RFC assessment failed to reflect limitations related to those impairments. (ECF No. 11, p. 11).

If a claimant has a medically determinable impairment (MDI), the ALJ must determine whether the impairment is severe or not, which is referred to as Step Two. 20 C.F.R. § 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* "Basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs," such as walking, standing, sitting, remembering simple instructions, and responding appropriately to supervision. 20 C.F.R. 416.922(b).

Here, the ALJ did not address Plaintiff's De Quervain's tenosynovitis at Step Two, or indeed anywhere in the opinion.

The Commissioner concedes that the ALJ did not address this impairment, but argues that the medical record evidence cited by Plaintiff "does not include a definition diagnosis of De Quervain's tenosynovitis, but rather states that claimant 'has right wrist pain which appears to be [De] Quervain's compounded by forearm, elbow and shoulder pain.'" (ECF No. 18, p. 21) (citing A.R. 920-921). Defendant further argues that the ALJ's RFC assessment properly accounted for symptoms that could be expected from a diagnosis of De Quervain's by providing for certain upper extremity limitations in the RFC that were supported by nerve conduction study results and Plaintiff's own testimony. (*Id.* at 22). Additionally, Defendant argues that any error in the ALJ's failure to discuss Plaintiff's De Quervain's impairment is harmless because an ALJ is not obligated to accept VE testimony that acknowledges greater restrictions than posed by the ALJ's hypothetical questions. (*Id.*)

The Court disagrees. In reviewing the ALJ's Step Two findings, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687. Here, the ALJ entirely failed to consider Plaintiff's De Quervain's diagnosis, despite evidence that Plaintiff experienced symptoms indicating De Quervain's prior to the date last insured. For example, notes from an October 2017 occupational therapy consult at the Veteran's Administration state that Plaintiff "has right wrist pain which appears to be [D]eQuervains compounded by forearm, elbow and shoulder pain." (A.R. 920-921). Further, treatment notes from Dr. Siddarth B. Joglekar, an orthopedic surgeon, indicate that Plaintiff was diagnosed with De Quervain's tenosynovitis in February 2018. (A.R. 2221). Dr. Joglekar's treatment notes also indicate that Plaintiff received treatment for DeQuervain's:

> 54-year-old lady with right upper extremity De Quervain's tenosynovitis. I do not believe that this patient has a significant carpal tunnel syndrome. Her symptoms of right little finger involuntary adduction spasms and pain seem to be of unclear etiology[.] I recommended a cortisone shot for her De [Q]uervain's tenosynovitis for diagnostic a well as therapeutic purposes. Injection in clinic with excellent diagnostic response. She should continue activity modifications splints anti-

> inflammatory medications following the shot for added relief and return to clinic after 8 weeks for follow-up.

(A.R. 2225). While the ALJ discussed medical records referencing Plaintiff's carpal tunnel syndrome later on in the analysis, she did not discuss Plaintiff's De Quervain's diagnosis at all in her decision. (*See e.g.*, A.R. 27-36).

The failure to address this impairment was thus error.[1]

B.     Migraine Headaches

Plaintiff next argues that the ALJ improperly found Plaintiff's migraine headaches to be non-severe. On that issue, the ALJ found as follows:

> The claimant has several impairments that are not severe, including migraine headaches, hypertension, and eczema. (B5F) The claimant testified that her migraine headaches are less severe on medication. The record indicates that the claimant had a history of migraines since 1996. (B7F/58) The overall record does not indicate that the claimant's migraines were of such severity or frequency that they would interfere with her work-related functioning. For example, the claimant generally did not present to the hospital or her health care provider for treatment of a debilitating headache during the relevant timeframe. . . The undersigned concludes that these [migraine headaches, hypertension, and eczema] impairments are not severe, as the record does not establish that they cause more than a minimal limitation in the claimant's ability to perform basic work activities. The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

(*Id.*) The ALJ's subsequent RFC assessment evaluated the limiting effects of the Plaintiff's reported symptoms:

> [At the hearing], [s]he stated that she is able to use her right hand for five minutes before she gets pain. The claimant indicated that she gets migraine headaches four days a week before her medication and now gets them twice a week and her

---

[1] While it is true that courts have found that an error at Step Two to be harmless where the ALJ proceeds to the remaining steps and evaluates symptoms from all medically determinable impairments, *see* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity."); *see also Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) ("Where the ALJ has found a severe medically determinable impairment at step two of the sequential analysis, 'all medically determinable impairments must be considered in the remaining steps of the sequential analysis.'") (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)), such is not the case here where the ALJ did not consider this impairment at any point in the opinion. *See Loader v. Berryhill*, 722 Fed.Appx. 653, 655 (9th Cir. 2018) ("The ALJ failed, however, even to mention Loader's depression or mental impairments when assessing his RFC, and the RFC itself says nothing at all about such impairments or their effects. Likewise, the ALJ failed to mention any such impairment in the hypothetical questions it posed to the vocational expert. We cannot conclude that the ALJ's failure to consider Loader's mental impairments when assessing his RFC or when questioning the vocational expert was harmless.").

4

> headaches are less intense.
>
> . . .
>
> In a function report completed in December 2017, the claimant alleged she is not able to work because of migraines, right neck and shoulder and bilateral hip pains, bilateral carpal tunnel syndrome, stress, anxiety, depression, and left heel spur and plantar fasciitis. (B7E/1). She reported difficulty with personal care due to physical issues. (B7E/2) The claimant stated she does not prepare meals because of physical issues. She stated she could dust and fold laundry. (B7E/3) The claimant reported shopping weekly, including in stores. The claimant indicated she could handle money. (B7E/4) She stated she spends time with others daily texting, on the computer or Facebook, or talking on the phone. The claimant indicated she goes to church every Sunday. (B7E/5) She reported occasionally losing her patience and getting angry. She stated she could walk 20-30 minutes before needing to rest. The claimant alleged she forgets spoken instructions. (B7E/6)
>
> In a headache questionnaire completed in December 2017, the claimant stated she has headaches at least three times a week with varying severity. She indicated that medication sometimes helps. (B6E/1-2)

(A.R. 28). However, the ALJ found Plaintiff's reported symptoms inconsistent with the medical evidence and other record evidence. (Id.) The ALJ also considered medical opinions and prior administrative findings regarding Plaintiff's migraines:

> [Dr. Stolz] noted the claimant had environmental limitations. He noted that the limitations were first present in 2011. (B14F/7-12) The undersigned does not find this opinion persuasive. Dr. Stolz's examination occurred after the claimant's date last insured. Presumably, he indicated the restrictions dated to 2011 based on her report that she was last employed in 2011 as well as her report of worsening migraines since 2011. (B14F/1) Otherwise, there is no indication why these limitations dated to 2011. Thus, Dr. Stolz did not support his opinion that the claimant had these limitations as early as 2011, eight years before his examination.

(A.R. 35).

As for the ALJ's Step Two finding regarding Plaintiff's migraine headaches, Defendant argues that the ALJ "correctly noted that the medical record was devoid of any evidence that Plaintiff presented to a medical provider for treatment of a debilitating headache during the relevant time-period." (ECF No. 18, p. 23) (citing A.R. 24). Plaintiff argues that, in fact, Plaintiff did seek treatment during the relevant period from a neurologist who doubled Plaintiff's prescription dose of Topiramate. (ECF No. 11, p. 15-16) (citing A.R. 956). However, the ALJ's Step Two finding notes that Plaintiff "*generally did not present* to the hospital or her health care provider for treatment of a debilitating headache during the relevant timeframe." (A.R. 24)

(emphasis added). While Plaintiff points to the fact that Plaintiff's primary care physician prescribed refills for migraine headache medication, those same treatment notes indicate "migraine w/out aura, not intractable, w/o status migrainosus." (A.R. 758, 767). Further, Plaintiff's September 2017 neurological visit treatment notes do not indicate that Plaintiff's recurrent migraines were resistant to treatment or otherwise interfered with Plaintiff's work-related functioning. (A.R. 956). Accordingly, the Court finds that the ALJ's severity finding regarding Plaintiff's migraines to be supported by substantial evidence.

## II.     CONCLUSION AND ORDER

For the reasons given, the decision of the Commissioner of the Social Security Administration is REVERSED IN PART and REMANDED IN PART. On remand, the Agency is directed to conduct further proceedings to determine the severity of Plaintiff's De Quervain's impairment at Step Two and proceed accordingly through the sequential evaluation process to address any additional limitations that should be considered.[2] The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:   **February 9, 2023**         /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE

---

[2] In light of this finding, the Court does not address Plaintiff's argument regarding the ALJ's evaluation of Plaintiff's subjective symptom testimony.